```
```
Case 12-02028   Doc 109   Filed 12/08/14   Page 1 of 6

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| IN RE:<br><br>James Edward Whitley, a/k/a<br>Ed Whitley,<br><br>      Debtor.<br>_____<br><br>Charles M. Ivey, III,<br>Chapter 7 Trustee for the<br>Estate of James Edward<br>Whitley,<br><br>      Plaintiff,<br><br>v.<br><br>First-Citizens Bank and<br>Trust Company,<br><br>      Defendant. | Case No. 10-10426<br><br><br><br><br><br><br><br><br><br><br><br><br>Adversary No. 12-02028 |

MEMORANDUM OPINION

This adversary proceeding came before the court on October 8, 2014, for hearing on the Defendant's motion for summary judgment. Edwin R. Gatton and Charles M. Ivey, III appeared on behalf of the Plaintiff and Michael P. Flanagan and Gary J. Rickner appeared on behalf of the Defendant.

FACTUAL BACKGROUND

The Debtor, James Edward Whitley, purportedly was engaged in the factoring business. In reality, the Debtor was engaged in a Ponzi scheme. The Debtor utilized a checking account located at First-Citizens Bank and Trust Company ("Defendant" or "Bank") to make deposits and write checks in the course of the Ponzi scheme.

The checking account at the Bank utilized by the Debtor has been identified as account number 8643. Two of the methods utilized by the Debtor in obtaining funds from his victims were to obtain checks from the victims made out to him or to have the victims wire funds to him for deposit in account number 8643.

During the two years preceding the filing of the involuntary chapter 7 petition against the Debtor, five such checks, including one cashier's check, were deposited by the Debtor in the following amounts: $293,708, $100,000, $75,000, $20,000 and $15,000 (the cashier's check). There were five other credits to account 8643 as a result of wire or telephone transfers originated by other victims. These credits were in the amounts of $100,000, $297,478, $80,000, $148,000 and $180,000. A $293,708 credit to account number 8643 resulted from the deposit of a check payable to the Debtor and his wife which was drawn on an attorney's trust account. A $300,000 credit to account number 8643 was the result of a transfer from by the Bank from the Debtor's construction loan account.

The Plaintiff asserts that all of these deposits involved transfers of property of the Debtor that were made with actual intent to hinder, delay or defraud creditors which can be avoided under section 548(a)(1)(A) or, alternatively, pursuant to section 544 and the North Carolina fraudulent transfer statutes. The Bank assets that it is entitled to summary judgment because "none of

these credits or deposits for Account No. 8643 constitutes a fraudulent transfer under 11 U.S.C. § 548 [because] (1) the eight transfers made by the investors were not transfers by the debtor, Whitley, of his property; and (2) the remaining three transfers were deposits into Whitley's checking account which did not diminish the bankruptcy estate."  While the court rejects the proposition that the deposit of the checks by or on behalf of the Debtor and the subsequent processing of the checks and wire transfers did not result in transfers of property of the Debtor to the Bank, the court agrees that the transfers to the Bank that did occur involving the checks and money orders did not diminish the bankruptcy estate, and for that reason will grant the motion for summary judgment.

## ANALYSIS

As the court pointed out in <u>Grayson Consulting, Inc. v. Wachovia Securities, LLC (In re Derivium Capital, LLC)</u>, 716 F.3d 355, 361 (4th Cir. 2013), "[t]he purpose of the Bankruptcy Code's avoidance provisions is to prevent a debtor from making transfers that diminish the bankruptcy estate to the detriment of creditors." As expressed in <u>Collier</u>, "fraudulent transfer law allows creditors to avoid transfers which unfairly or improperly deplete a debtor's assets. . . ." 5 <u>Collier on Bankruptcy</u> ¶ 548.01 (6th Ed. 2014). Because the transfers at issue in <u>Dividium</u> did not diminish the debtor's estate, they were not fraudulent transfers under section

548 of the Bankruptcy Code. 716 F.3d at 361. The same is true in this proceeding—the transfers to the Bank in this case resulting from the deposits of the checks and wire transfers were not fraudulent transfers because, although different from the type of transfers involved in <u>Dividium</u>, they did not diminish the Debtor's estate nor place the funds involved in the transfers beyond the reach of creditors. The critical facts underlying this result are that (1) the transfers to the Bank made or caused to be made by the Debtor were to a bank account belonging to the Debtor and (2) such account was an ordinary checking account in which the funds in the account were readily available to the Debtor.

The legal effect of a debtor making a deposit into its own checking account is succinctly stated in <u>New York County Nat. Bank v. Massey</u>, 192 U.S. 138, 147, 24 S.Ct. 199, 201 (1904):

> As we have seen, a deposit of money to one's credit in a bank does not operate to diminish the estate of the depositor, for when he parts with the money he creates at the same time, on the part of the bank, an obligation to pay the amount of the deposit.

The foregoing scenario is exactly what occurred when the Bank received the funds resulting from the deposit of the checks belonging to the Debtor and the receipt of the wire transfers. In each instance, the Debtor received credit and became a creditor of First Citizens in an amount equal to the amount of the check or wire transfer. The funds then remained subject to the control of the Debtor and were available to him at any time he wished to write

a check on his checking account or otherwise make a withdrawal from the account. The funds that went into the Debtor's checking account were not placed beyond the reach of creditors. To the contrary, had a bankruptcy filing occurred immediately after the funds were credited to the checking account, the checking account would have been property of the bankruptcy estate and the funds then attributable to the account would have been available to the bankruptcy trustee.

Based upon the foregoing, the court concludes that the Bank's motion for summary judgment should be granted. An order so providing is being entered contemporaneously with the filing of this memorandum opinion.

This 8th day of December, 2014.

_William L. Stocks_
WILLIAM L. STOCKS
United States Bankruptcy Judge

# SERVICE LIST

William P. Miller, Esq.
U.S. Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC 27401

Charles M. Ivey, III
Edwin R. Gatton
P. O. Box 3324
Greensboro, NC 27402

Catherine Ghiglieri
Ghiglieri & Company
2300 Cypress Point West
Austin, TX 78746

Gary J. Rickner, Esq.
Ward and Smith, P.A.
PO Box 33009
Raleigh, NC 27636-3009

Benjamin E.F.B. Waller, Esq.
PO Box 8088
Greenville, NC 27835-8088

Michael P. Flanagan
PO Box 8088
Greenville, NC 27835-8088